NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRYAN O. CRANE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2016-2364

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-00435-SGB, Judge Susan G. Braden.

---

Decided: November 7, 2016

---

BRYAN O. CRANE, Saint James City, FL, pro se.

COURTNEY D. ENLOW, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before MOORE, WALLACH, and HUGHES, *Circuit Judges.*

PER CURIAM.

Bryan O. Crane filed suit against the federal government seeking unpaid vacation and sick leave pay, loss of investment income from his unpaid pay, and travel expenses under the Federal Tort Claims Act and Maryland state law. The Court of Federal Claims dismissed Mr. Crane's claims for lack of jurisdiction. Because the Court of Federal Claims cannot hear tort and state law claims, and because Mr. Crane's claims are time-barred, we affirm.

I

Mr. Crane worked for the Naval Air Systems Command (NAVAIR) in Patuxent River, Maryland. On February 12, 2000, Mr. Crane was placed on inactive status after a work-related accident. He medically retired from federal service on July 3, 2006. Between February 12, 2000 and July 3, 2006, Mr. Crane received workers' compensation and Social Security Disability benefits except for one week in February 2003, when he returned to work.

When Mr. Crane returned to work on February 3, 2003, the Defense Financial and Accounting Services (DFAS), NAVAIR's payroll provider, reactivated his normal pay. On February 7, 2003, Mr. Crane informed NAVAIR that he could not continue working because he had not received the agreed upon ergonomic conditions. Although Mr. Crane stopped working, DFAS erroneously failed to stop paying him his normal salary until April 13, 2005. DFAS paid Mr. Crane initially through direct deposits and later with checks mailed to his home.

The parties agree that, to repay the erroneous wages, Mr. Crane sent DFAS two personal checks, totaling $16,837.06, on February 13, 2004 and January 3, 2006. Mr. Crane also returned five government checks totaling $7,962.38. Further, DFAS deducted $10,280.00 from

offset amounts allowable by law, such as Mr. Crane's Thrift Savings Plan and retirement funds.

The parties disagree over whether Mr. Crane returned additional money, and what amount, if any, remained to be paid by him. According to the government, after all the above payments, Mr. Crane still had an outstanding debt of approximately $8,000. When Mr. Crane retired from federal service on July 3, 2006, he was due a lump-sum payment of $9,755.00 for accrued annual leave. Since the government's calculations showed that Mr. Crane still owed roughly $8,000, DFAS did not pay Mr. Crane the lump-sum payment and instead deducted $3,960.53 for Federal and State taxes, Social Security, and Medicare, and applied the remaining $5,794.47 toward Mr. Crane's outstanding debt.

Mr. Crane, meanwhile, alleges that he had fully repaid all erroneous payments made by DFAS and that DFAS improperly took his lump-sum annual leave payment. On March 19, 2008, Mr. Crane appealed DFAS's actions to the Office of Personnel Management. That appeal was denied because Mr. Crane had not filed a claim with the Department of the Navy before filing his OPM claim.

At the same, Mr. Crane asked United States Senator Bill Nelson to intervene on his behalf. On April 24, 2008, DFAS responded to Senator Nelson with an audit of Mr. Crane's pay records that showed the government had over-collected Mr. Crane's debt by $1,386.51. The government subsequently returned that amount to him.

Mr. Crane, however, still alleging that DFAS owed him money, filed a claim with the Navy on May 12, 2008, which it denied on September 15, 2009. The Navy advised Mr. Crane that its response to Senator Nelson's inquiry on his behalf represented the final agency decision on this matter.

Mr. Crane filed his second claim with OPM on November 17, 2009, which was denied on November 15, 2012, after OPM found that Mr. Crane had not established that DFAS incorrectly calculated his salary overpayment.

On April 29, 2015, Mr. Crane filed suit in the Court of Federal Claims under the Federal Tort Claims Act and the Maryland Wage Payment and Collection Law, alleging the government owed him compensation for unpaid vacation and sick pay, lost investment income from unpaid vacation pay, lost investment income from unpaid sick pay, unreimbursed travel expenses, lost investment income from unreimbursed travel expenses, and physical and mental damages. The Court of Federal Claims dismissed Mr. Crane's complaint for lack of jurisdiction.

Mr. Crane appeals only the dismissal of his claims for unpaid vacation pay and lost investment income from unpaid vacation pay. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

We review de novo a dismissal by the Court of Federal Claims for lack of jurisdiction. *Coast Prof'l, Inc. v. United States*, 828 F.3d 1349, 1354 (Fed. Cir. 2016).

"The Court of Federal Claims is a court of limited jurisdiction." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). The Tucker Act, with only limited exceptions not applicable here, confers jurisdiction on the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act does not create a cause of action, however, and "jurisdiction under the Tucker Act requires the litigant to

identify a substantive right for money damages against the United States separate from the Tucker Act itself." *Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004).

Mr. Crane seeks his unpaid vacation pay and loss of investment income under the Federal Tort Claims Act, 28 U.S.C. § 2672 *et seq.*, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-507.2(a).  We agree with the Court of Federal Claims that it lacks jurisdiction over claims brought under these laws.  Section 1491(a) expressly precludes the Court of Federal Claims from hearing cases "sounding in tort."  *See also Keene Corp. v. United States*, 508 U.S. 200, 214 (1993) ("[T]ort cases are outside the jurisdiction of the Court of Federal Claims . . . .").  Further, under the Federal Tort Claims Act, jurisdiction over tort claims lies exclusively in the United States district courts.  28 U.S.C. § 1346(b)(1); *see also Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002) ("The Court of Federal Claims is not a district court of the United States . . . ."). Finally, "[c]laims founded on state law are . . . outside the scope of the limited jurisdiction of the Court of Federal Claims." *Souders v. South Carolina Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007).

Even though the Court of Federal Claims does not have jurisdiction over Mr. Crane's claims as pled, because he is proceeding *pro se*, we construe his complaint liberally to see if he has articulated another basis for jurisdiction.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citations omitted).

Here, another basis for jurisdiction over Mr. Crane's claims does not exist because his claims are time-barred.

"Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues."   28 U.S.C. § 2501. "This six-year limitations period is jurisdictional and may not be waived or tolled." *FloorPro, Inc. v. United States*, 680 F.3d 1377, 1380–81 (Fed. Cir. 2012). A claim against the government generally accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). "The question whether the pertinent events have occurred is determined under an objective standard; a plaintiff does not have to possess actual knowledge of all the relevant facts in order for the cause of action to accrue." *Fallini v. United States*, 56 F.3d 1378, 1380 (Fed. Cir. 1995).

Mr. Crane alleges that when he separated from federal service on July 3, 2006, DFAS failed to pay him a lump-sum payment covering his annual leave. Thus, any cause of action Mr. Crane might have had accrued, at the latest, by July 3, 2006. Mr. Crane did not file his complaint at the Court of Federal Claims until April 29, 2015, almost nine years after any claim accrued, and almost three years after the six-year limitations period had run. Therefore, his claims are time-barred.

Because the Court of Federal Claims does not have jurisdiction to hear claims arising under the Federal Tort Claims Act and Maryland Wage Payment and Collection Law, and because Mr. Crane's claims are time-barred, the Court of Federal Claims did not err in dismissing Mr. Crane's complaint.

## AFFIRMED

No costs.